**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JOSEPH N. TALLIE,**

    **Plaintiff,**

    v.                                                           CASE NO. 22-3176-JWL-JPO

**CRAWFORD COUNTY, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

This matter is a civil rights action. The Court conducted an initial review of the case and directed Plaintiff to show cause why his Complaint should not be dismissed. (Memorandum and Order to Show Cause, Doc. 5) ("MOSC"). The MOSC also gave Plaintiff the opportunity to file an amended complaint. Before the Court for screening is Plaintiff's Amended Complaint (Doc. 12).

**I. Nature of the Matter before the Court**

Plaintiff was a state pretrial detainee confined at the Crawford County Jail ("CCJ") in Girard, Kansas, at the time of filing. The plaintiff proceeds *pro se* and *in forma pauperis*.

In the Amended Complaint, Plaintiff states that he was held at the Crawford County Jail from July, 2018, through January, 2020, with no bond. During that time, he alleges that he was housed in the maximum-security pod of the CCJ and was denied outdoor recreation, denied adequate dental care or dental hygiene items, denied in-person visits, and denied adequate access to a law library.

1

Plaintiff names the following defendants: Crawford County, Kansas; Danny Smith, Crawford County Sheriff; Ryan Dill, Captain with the Crawford County Sheriff's Department and in charge of the CCJ; the Crawford County District Court; and Dan Peak, the former Sheriff of Crawford County. Plaintiff seeks monetary relief in the amount of $250,000, as well as $100,000 for mental anguish resulting from tooth pain.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

"Because pretrial detainees in state custody have not been adjudicated guilty, they have a right under the Fourteenth Amendment's Due Process Clause not to be punished." *Khan v. Barela*, 808 F. App'x 602, 606 (10th Cir. 2020) *(citing Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979)). The Court must therefore decide whether a condition or restriction of pretrial detention "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (quoting *Bell*, 441 U.S. at 538). A detainee can establish unconstitutional pretrial punishment upon "a showing of an expressed intent to punish on the part of detention facility officials." *Id.* Although detention facility officials cannot "justify punishment," a restriction or condition that "is reasonably related to a legitimate governmental objective ... does not, without more, amount to punishment." *Id.* (quoting *Bell*, 441 U.S. at 539) (internal quotation marks omitted). However, a court may infer an intent to punish "if a restriction or condition is not reasonably related to a legitimate governmental goal—if it is arbitrary or purposeless." *Id.*

After reviewing Plaintiff's Amended Complaint, the Court finds that it is subject to dismissal for the following reasons.

### A. Count I: Deprivation of Sunlight and Fresh Air

Plaintiff alleges that his Fourteenth Amendment rights were violated because he was denied access to the outdoors from July, 2018, until January, 2020. He states that he became depressed as a result and was prescribed an anti-depressant, but the medication only "blurred his

4

thoughts and suppressed his personality." Doc. 12, at 5. He further alleges that he developed a Vitamin D deficiency. *Id.* at 7.

The Prison Litigation Reform Act (PLRA) provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Count I is subject to dismissal because Plaintiff has not described any physical injury that was caused by the alleged deprivation. His claim of depression is a mental or emotional injury, and his claim of Vitamin D deficiency alone does not demonstrate any actual physical injury.

### B. Count II: Inadequate Dental Care

Plaintiff alleges that he requested a "better" toothbrush, "adequate" toothpaste, mouthwash, and dental floss, but his requests were denied. (Doc. 12, at 5). He asked to have his teeth cleaned and cavities filled but was denied. Eventually, Plaintiff developed bleeding gums, and a cavity in his back tooth became "worse" and caused Plaintiff "extreme pain." *Id*. at 5-6. He was given ibuprofen for the pain and alleges he "grew dependent" on the medication, resulting in elevated liver enzymes. *Id*. at 6. Plaintiff asserts that Defendant Dill had a policy of limiting the dental treatment provided at the CCJ to tooth pulls. Eventually, Plaintiff agreed to have the tooth pulled.

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Crowson v. Wash. Cty.*, 983 F.3d 1166, 1178 (10th Cir. 2020) (internal

quotation marks and citation omitted). The two-part Eighth Amendment inquiry governs. *Id.* Objectively, the deprivation must be sufficiently serious to constitute a deprivation of a constitutional dimension; and subjectively, a prison official must know of and disregard an excessive risk to inmate health or safety. *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

Count II is subject to dismissal. Plaintiff does not allege that he was denied dental care or that the defendants refused to provide any dental treatment. His allegations indicate that he had basic dental care items, that he was offered extraction of the painful tooth, and that he was provided treatment for the pain. Furthermore, there is no indication that either the alleged policy or the actions or inactions of any defendant were intended as punishment. Plaintiff's allegations simply do not rise to the level of a violation of his constitutional rights.

### C. Count III: Denial of Access to Law Library

Plaintiff alleges that he was only given free access to state statutes, the U.S. Constitution, and U.S. Codes while at the CCJ. He was charged 25¢ per page to read case law. Plaintiff claims that this resulted in him filing *Tallie v. Pittsburg Police Dept.*, Case No. 22-cv-3152, out of time and forced him "to believe lies from court appointed lawyers, affecting the outcome of his cases." (Doc. 12, at 7).

This claim is also subject to dismissal. As explained in the MOSC, to state a viable claim for denial of access to the courts, an "inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing."). An inmate may satisfy the actual-

6

injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53.

Here, Plaintiff attempts to show prejudice by claiming his limited access to a law library resulted in the late filing of another case before this Court. However, while the Court did find that Case No. 22-cv-3152 was untimely, the Court also found that Plaintiff failed to state an actionable claim. *See Tallie v. Pittsburg Police Dept.*, Case No. 22-cv-3152, Doc. 19.

Moreover, the Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355; *see also Carper v. Deland*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus."). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis,* 518 U.S. at 356. Plaintiff's other case involved claims of excessive force and property damage based on an arrest; it was not an attack on his sentence or the conditions of his confinement.

### D. Count IV: Denial of In-Person Visits

Plaintiff claims that he was denied in-person, face-to-face visits at the CCJ, despite the jail having a "through the glass" visiting room. Plaintiff was allowed only video visits on a low-quality camera with other inmates present.

There is no right to unfettered visitation for detainees. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 461 (1989). Restrictive visitation procedures and determinations are

clearly within the scope of prison security, and as such are subject to the broad discretion of prison officials. *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Here, especially given the pandemic, the Court cannot find that Plaintiff has stated a claim for violation of his constitutional rights. Plaintiff cites one case, *Crane v. Utah Dept. of Corrections*, 15 F.4th 1296, 1305 (10th Cir. 2021), but *Crane* involves seriously mentally ill inmates being held in solitary confinement and denied all visitation.

Count IV is subject to dismissal for failure to state a claim.

### E. Count V: Punishment

Plaintiff argues that all of the claimed mistreatment resulted in him being punished as a pretrial detainee in violation of his constitutional rights. The Court has considered the question of punishment and finds that the allegations contained in the Amended Complaint do not demonstrate an express or inferred intent to punish on the part of any defendant. This count is subject to dismissal.

### F. Count VI: Denial of Bond

Plaintiff claims that he was denied bond in violation of Section 9 of the Kansas Bill of Rights. He names the Crawford County District Court as the defendant to this claim. (Doc. 12, at 11).

This count is also subject to dismissal. First, it is based on a violation of state law, which does not state a claim under § 1983. "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994). Furthermore, Plaintiff does not name a suable entity as defendant to the claim. As Plaintiff was previously informed in the MOSC, the Crawford County District Court is not a proper defendant because it is not a "person" subject to suit for money damages under § 1983. *See Will v. Michigan Dept. of*

*State Police*, 491 U.S. 58, 66, 71 (1989); *Clark v. Anderson*, No. 09-3141-SAC, 2009 WL 2355501, at *1 (D. Kan. July 29, 2009); *see also Aston v. Cunningham*, No. 99–4156, 2000 WL 796086 at *4 n.3 (10th Cir. Jun. 21, 2000) ("a detention facility is not a person or legally created entity capable of being sued"); *Busekros v. Iscon*, No. 95-3277-GTV, 1995 WL 462241, at *1 (D. Kan. July 18, 1995) ("[T]he Reno County Jail must be dismissed, as a jail is not a 'person' within the meaning of § 1983.").

A claim of denial of bond may be based on the Eighth Amendment's Excessive Bail Clause. *See Peterson v. Tomich*, No. 1:22-CV-0116-SWS, 2022 WL 3700725, at *3 (D. Wyo. May 27, 2022); *see also Halik v. Darbyshire*, No. 20-CV-01643-PAB-KMT, 2021 WL 4556188, at *13 (D. Colo. Aug. 23, 2021), report and recommendation adopted, No. 20-CV-01643-PAB-KMT, 2021 WL 4305011 (D. Colo. Sept. 22, 2021), and *Masad v. Nanney*, No. 14-CV-00577-MJW, 2014 WL 4265848, at *6 (D. Colo. Aug. 27, 2014). However, "[b]ecause tort principles apply to § 1983 claims, and because judicial officers have long been held to be superseding causes that break the chain of proximate causation," an Eighth Amendment excessive bail claim can only succeed where: (1) there is an individual defendant who "deliberately or recklessly misled the judicial officer who set bail;" and where (2) "bail would not have been unconstitutionally excessive but for the [defendant's] misrepresentations." *Id.* (quoting *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 664 (9th Cir. 2007)) (alterations omitted); *see, e.g., Olajide v. Arsanis*, No. 12-CV-04303-WHO, 2014 WL 985102, at *7 (N.D. Cal. Mar. 7, 2014) (dismissing an excessive bail claim, as inadequately pleaded, where the plaintiff failed to allege either that the bail was set with an improper purpose, or that the defendant "caused the alleged Eighth Amendment violation").

Plaintiff's Amended Complaint is completely lacking in facts establishing that any defendant "deliberately or recklessly misled the judicial officer" who allegedly "ordered [Plaintiff]

9

into [CCJ] custody with no bond" (Doc. 12, at 5), or that he would have been released on bond "but for" a defendant's misrepresentations. Thus, Plaintiff fails to state an Eighth Amendment excessive bail/denial of bond claim.

### G. Count VII: Conspiracy to Deprive Plaintiff of his Civil Rights

Plaintiff alleges that "Crawford County District Court officials" conspired with CCJ "officials" to have him housed in the maximum-security pod with no opportunity for outdoor recreation. (Doc. 12, at 12).

There are several problems with this claim. First, as previously explained, the district court or district court officials are either not suable under § 1983 or are immune from suit for damages. Second, Plaintiff has not alleged the personal participation of any individual defendant in the conspiracy.

Finally, a conspiracy claim under § 1983 requires the allegation of "specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). In addition, a plaintiff must allege facts showing an actual deprivation of a constitutional right. *See Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (in order to prevail on a § 1983 conspiracy claim, a plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right").

Plaintiff's conspiracy claim is subject to dismissal for failure to allege adequate facts to establish the elements of this claim. As noted, in order to state a claim of conspiracy, Plaintiff must allege facts showing both an agreement and an actual deprivation of a constitutional right. *See Thompson*, 58 F.3d at 1517. Plaintiff's Amended Complaint does neither. Even though Plaintiff's allegations are accepted as true on initial review, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiff's Amended Complaint asserts conclusory and speculative claims of conspiracy among jail and court officials with no supporting factual allegations. Such bald assertions fail to state a viable claim for relief. *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (per curiam) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

### H.  Count VIII: Denial of Equal Protection

Plaintiff alleges that he was singled out from the other inmates without reasonable justification and placed in the maximum-security pod without cause. He claims that other inmates' classification was based on reasonable factors such as behavior, criminal history, and aggravated charges.

The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); see also *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006) ("Equal protection is essentially a direction that all persons similarly situated should be treated alike."). An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). Therefore, in order to succeed on an equal protection claim, Plaintiff must allege that he was "similarly situated" to other inmates and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S.78, 89 (1987)); see also *Rider v. Werholtz*, 548 F. Supp. 2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)). A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory purpose"

was a motivating factor in the disparate treatment attacked in the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If the alleged difference in treatment is not based on a suspect classification, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012) (quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)). Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim. First, there is a presumption in favor of validity of prison officials' disparate treatment. *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003). Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) ("it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect"); see also *Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

Plaintiff's equal protection claim is subject to dismissal for failure to allege facts establishing its essential elements. *See Rider v. Werholtz*, 548 F. Supp. 2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)). He does not identify specific similarly situated individuals who received different treatment, and his allegations of being "similarly situated" are nothing more than bald statements. Furthermore, he does not allege facts suggesting that he was treated differently because he belongs to a suspect class or due to his religion. Rather, he simply alleges disparate treatment based solely upon his being housed in

maximum security. He supports his equal protection claims with statements like, "Plaintiff was singled out from all other inmates without reasonable justification" (Doc. 12 at 12). This wholly conclusory statement is not sufficient to plausibly state an equal protection claim. Plaintiff's Amended Complaint also fails to establish a discriminatory purpose on the part of defendants. Plaintiff submits nothing more than unsupported allegations of improper intent of the defendants, allegations which are deficient in establishing a claim under § 1983.

Plaintiff's equal protection claim is subject to dismissal.

## IV. Response Required

For the reasons stated herein, Plaintiff's Amended Complaint is subject to dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). Plaintiff is therefore required to show good cause why his Amended Complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the Complaint being dismissed for the reasons stated herein without further notice.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **January 30, 2023,** in which to show good cause, in writing, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated December 28, 2022, in Kansas City, Kansas.**


**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**